UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FELICIA A. GUTIERREZ,      )
                           )    No. CV-06-3092-CI
          Plaintiff,       )
                           )    ORDER GRANTING PLAINTIFF'S
v.                         )    MOTION FOR SUMMARY JUDGMENT
                           )    AND REMANDING FOR ADDITIONAL
MICHAEL J. ASTRUE          )    PROCEEDINGS PURSUANT TO
Commissioner of Social     )    SENTENCE FOUR 42 U.S.C.
Security,                  )    § 405(g)
                           )
          Defendant.       )
                           )

     BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.
Rec. 27, 30.)  Attorney D. James Tree represents Plaintiff; Special
Assistant United States Attorney Richard Rodriguez represents
Defendant.    The parties have consented to proceed before a
magistrate judge. (Ct. Rec. 8.)  After reviewing the administrative
record and briefs filed by the parties, the court **GRANTS** Plaintiff's
Motion for Summary Judgment, and remands the matter to the
Commissioner for additional proceedings.

                **JURISDICTION AND PROCEDURAL HISTORY**

     On January 24, 2003, plaintiff Felicia Gutierrez (Plaintiff)
protectively filed an application for Social Security Income
benefits. (Tr. 57.)  She alleged disability due to osteoarthritis of
the spine, liver disorder, and back pain, with an onset date of

November 2002.  (Tr. 66.)  Benefits were denied initially and on reconsideration.  (Tr. 27.)  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Mary Bennett Reed on May 23, 2005.  (Tr. 279-305.)  In her request for hearing, Plaintiff added impairments due to depression, anxiety and obesity.  (Tr. 101.)  Plaintiff, who was represented by counsel, testified.  Vocational expert Diane Kramer, appeared and was examined by Plaintiff's attorney.  (Tr. 303-04.)  The ALJ denied benefits and the Appeals Council denied review.  (Tr. 5-7.)  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here.  At the time of the hearing, Plaintiff was 34 years old.  She testified she was five feet seven inches in height and weighed two hundred and fifty or sixty pounds.  (Tr. 283.)  She had a ninth-grade education and was divorced.  (Tr. 72, 257.)  She had seven children at the time of the hearing; a three-year old, five-year old and eight-month old twins lived with her at home.  (Tr. 72, 293.)  She testified she worked briefly at the YWCA but could not sustain the work due to pain, problems with co-workers and the work environment.  (Tr. 284-85.)  She testified she could not work due to pain, fatigue, and mental health issues.

## ADMINISTRATIVE DECISION

At step one, ALJ Reed found Plaintiff had not engaged in substantial gainful activity during the relevant time.  (Tr. 23.)  At steps two and three, she found Plaintiff had severe impairments,

1   but they did not meet or equal one of the listed impairments in

2   Appendix 1, Subpart P, Regulation No. 4 (Listings).   (Tr. 23.)

3   Specifically, the ALJ found Plaintiff had the severe physical

4   impairments of degenerative disc disease, obesity, and liver

5   disease, but did not have a severe mental impairment.   (Tr. 20.)

6   She found Plaintiff's subjective complaints regarding her functional

7   limitations were "not fully credible." (Tr. 21-22.)   At step four,

8   the ALJ found Plaintiff had no past relevant work but retained the

9   residual functional capacity (RFC) for a full range of light work.

10  (Tr. 24.)  At step five, referencing Medical-Vocational Rule 202.17,

11  the ALJ found Plaintiff was not under a "disability" as defined by

12  the Social Security Act through the date of her decision.   (Id.)

13                          **STANDARD OF REVIEW**

14       In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

15  court set out the standard of review:

16           A district court's order upholding the Commissioner's
         denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
17       211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
         Commissioner may be reversed only if it is not supported
18       by substantial evidence or if it is based on legal error.
         *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
19       Substantial evidence is defined as being more than a mere
         scintilla, but less than a preponderance.   *Id.* at 1098.
20       Put another way, substantial evidence is such relevant
         evidence as a reasonable mind might accept as adequate to
21       support a conclusion.   *Richardson v. Perales*, 402 U.S.
         389, 401 (1971).   If the evidence is susceptible to more
22       than one rational interpretation, the court may not
         substitute its judgment for that of the Commissioner.
23       *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169
         F.3d 595, 599 (9th Cir. 1999).

24           The ALJ is responsible for determining credibility,
25       resolving conflicts in medical testimony, and resolving
         ambiguities.   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
26       Cir. 1995).   The ALJ's determinations of law are reviewed
         *de novo*, although deference is owed to a reasonable
27       construction of the applicable statutes.   *McNatt v. Apfel*,

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS
PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 3

201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (*citing* 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will

1   still be set aside if the proper legal standards were not applied in

2   weighing the evidence and making the decision. *Brawner v. Secretary*

3   *of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If

4   there is substantial evidence to support the administrative

5   findings, or if there is conflicting evidence that will support a

6   finding of either disability or non-disability, the finding of the

7   Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-

8   1230 (9th Cir. 1987).

9                                    **ISSUES**

10      The question is whether the ALJ's decision is supported by

11   substantial evidence and free of legal error. Specifically,

12   Plaintiff argues the ALJ erred at step two when she found no severe

13   mental impairment, and at step five when she failed to identify

14   specific jobs Plaintiff could perform in light of her specific

15   functional limitations. (Ct. Rec. 28 at 11.)

16                                  **DISCUSSION**

17   **A.    Step Two: Mental Impairments**

18      To satisfy step two's requirement of a severe impairment, the

19   Plaintiff must provide medical evidence consisting of signs,

20   symptoms, and laboratory findings; the claimant's own statement of

21   symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects

22   of all symptoms must be evaluated on the basis of a medically

23   determinable impairment which can be shown to be the cause of the

24   symptoms. 20 C.F.R. § 416.929. The Commissioner has passed

25   regulations which guide dismissal of claims at step two. Those

26   regulations state an impairment may be found to be not severe only

27   when evidence establishes a "slight abnormality" on an individual's

28

1 ability to work. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)

2 (*citing Social Security Ruling* (*SSR*) 85-28). The ALJ must consider

3 the combined effect of all of the claimant's impairments on the

4 ability to function, without regard to whether each alone was

5 sufficiently severe. *See* 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991).

6 The step two inquiry is a *de minimis* screening device to dispose of

7 groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137,

8 153-154.

9     Here, although the ALJ found Plaintiff had been treated with

10 medication and counseling for depression and anxiety, she found no

11 severe mental impairment. (Tr. 20.) She reasoned as follows:

12     However, review of records indicate [sic] no ongoing
      problems with depression or anxiety at Exhibit 9F, indeed
13     there is only one mention in that Exhibit . . . in April
      2003. Exhibit 8F refers only to depression as a teenager.
14     Exhibit 11F indicates no mention of depression until
      October 2003 . . . when she appeared alert, oriented and
15     not distressed. The claimant has not alleged disability
      based on depression or anxiety, only mentioning her back
16     and liver as a problem. In the consultative psychological
      examination . . . , no diagnosis could be made based on
17     malingered test results. Dr. Toews stated he assessed a
      moderate limitation in the ability to interact
18     appropriately with the public based on motivational
      factors, and not on any medically determinable mental
19     impairment. As the claimant stated she would not go back
      for an additional evaluation, based on the current
20     evidence of record, the undersigned finds she does not
      have a severe mental impairment.

21

22 (Tr. 20.)

23     The record shows that the ALJ's findings of "no ongoing

24 problems with depression and anxiety" is not supported by

25 substantial evidence. In June 2002, and in other places in the

26 record, Plaintiff complained of fatigue; her treating sources

27 assessed "chronic fatigue," and noted a history of depression and

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS
PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 6

anxiety. (Tr. 108, 128.)  In June 2003, Plaintiff reported increased problems with depression in her reconsideration report, and in her request for an ALJ hearing. (Tr. 96, 101.)  Medical records reflect she was prescribed anti-depressants as treatment for depression by her treating physicians at Central Washington Family Medicine.  She was also assessed with anxiety.[1]  Low back pain was attributed to her obesity. (Tr. 149, 150, 174, 176.)

Mental health progress notes from Central Washington Comprehensive Mental Health consistently report Plaintiff's depressed and anxious mood and treatment with antidepressants. (Tr. 205, 207, 209, 226, 236.)  Plaintiff's complaints are consistent with the medical record in its entirety, which shows intermittent diagnoses of depression, anxiety, post-traumatic stress disorder,

---

[1]  In her credibility findings, the ALJ discounted Plaintiff's allegations of mental problems due, in part, to Plaintiff's statement that she was too busy to take the medications. (Tr. 21.)  However, the Ninth Circuit cautions against chastising one with a mental impairment for the exercise of poor judgment in seeking rehabilitation. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  Further, medical records indicate Plaintiff did not take the medication for fear of an adverse reaction and concerns for the safety of her unborn child.  Plaintiff explained she had suffered an adverse reaction from another drug at the same time she was prescribed anti-depressants. (Tr. 149-50, 208.)  These are good reasons for not following a treatment recommendation and, therefore, should not impugn Plaintiff's credibility. *SSR* 96-7p.

chronic pain, and fatigue.  There is no indication that Plaintiff's treating medical sources dismissed Plaintiff's complaints as unfounded or refused to treat her reported symptoms.  Thus, there is not the total absence of objective medical evidence necessary to preclude a step two finding of "severe" mental impairment.  *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).  Finally, the ALJ found Plaintiff had the severe impairment of obesity, an impairment that may cause or contribute to depression.  *SSR* 02-1p, Policy Interpretation ¶2.

Although Plaintiff may not succeed in proving she is disabled, as defined by the Social Security Act, the ALJ lacked substantial evidence to find no medically severe mental impairment.  The ALJ should continue the sequential evaluation beyond step two to include limitations caused by Plaintiff's severe physical and psychological impairments (alone and in combination), pain and fatigue, as directed by the Regulations.  20 C.F.R. §§ 416.920, .920a, .929; *SSR* 02-1p.

**B.  <u>Residual Functional Capacity - Obesity</u>**

Plaintiff contends the ALJ did not consider the impact of her obesity in combinations with her other impairments.  (Ct. Rec. 28 at 17.)  While obesity has been eliminated as a Listing, it can constitute the equivalence of a Listing.  Social Security Ruling 02-01p addresses the significance of obesity in the sequential evaluation process.  Prefaces to the musculoskeletal, respiratory and cardiovascular body system Listings provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems.  *See, e.g.,* 20 C.F.R. § 404,

Subpt. P, App. 1, 1.00Q.  The Commissioner recognizes that obesity will constitute a severe impairment when "it significantly limits an individual's physical or mental ability to do basic work activities." *SSR* 02-01p.

Additionally, obesity must be considered at step four of the process because it can cause limitation of function.  An assessment should be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.  *Id.*  Weight gain alone does not evidence impaired functionality; that is why *SSR* 00-3p and 02-1p direct an ALJ to evaluate the effect of a claimant's obesity with reference to a listed impairment and not to make assumptions about the severity or functional effects of obesity.  *SSR* 02-1p at ¶1 & ¶6; *SSR* 00-3p at ¶6.  The Listing for musculoskeletal impairment specifically notes the potential impact of obesity on that condition.  20 C.F.R. § 404, Subpt P, App. 1, Listing 1.00(Q).[2]

Here, at step 2 the ALJ found Plaintiff's obesity was a severe

---

[2] The revised listing added the following paragraph:

> Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity.  The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately.  Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt P, App. 1, Listing 1.00Q.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 9

impairment.   However, the step four analysis did not adequately address obesity and its combined effect with Plaintiff's musculoskeletal impairments and depression.   The ALJ simply found "Plaintiff is obese."   (Tr. 22.)   Because obesity can cause limitation of function, the combined effects of obesity with Plaintiff's osteoarthritis, back pain, fatigue and depression symptoms may be greater than expected without obesity.   *SSR* 02-1p. A failure to consider the cumulative limitations caused obesity is reversible error.   *See Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003); *SSR* 96-8p (ALJ must consider all limitations imposed by claimant's impairments, severe and non-severe, in assessing RFC). If, on remand, the ALJ determines there is insufficient evidence to determine the cumulative effect of Plaintiff's obesity and other impairments on her ability to work on a sustained basis, the record must be developed further, and if necessary, expert testimony must be taken.   *See e.g. Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).

## C.   Step Five - Use of the Medical-Vocational Guidelines

At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform.   *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).   The Medical-Vocational Guidelines (Grids) is a matrix system developed by the Commissioner for resolving cases that involve substantially uniform functional capacities.   *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 578 (9th cir. 1988).   The Grids were adopted to improve

the efficiency of disability benefits proceedings.  *Id.*  Their use was upheld as valid in *Heckler v. Campbell,* 461 U.S. 458 (1983). However, the Grids are an administrative tool, and there are strict limits on when the Commissioner may rely on them; the exclusive use of the Grids is proper only where "a claimant's functional limitations fall into a standardized pattern accurately and completely described by the Grids."  *Tackett,* 180 F.3d at 1103 (*citing Desrosiers*, 846 F.2d at 577).  Where the Grids do not accurately describe a claimant's condition, the Grids are used as a "framework for decision-making," and vocational expert testimony is required to determine if there are jobs in the national economy that the individual claimant can perform.  *See Polny v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1988); *SSR* 83-12.  Where the Grids are not determinative, the Commissioner has the burden of showing specific jobs within the claimant's capabilities. *See Kail,* 722 F.2d at 1498. Further, a claimant's particular limitations, including pain, fatigue, and in the case of Plaintiff, obesity, and their impact on the full range of light work must be evaluated individually.  *SSR* 83-12.

The ALJ applied the Grids in her determination that Plaintiff was not disabled.  (Tr. 23.)  However, the Grids do not adequately describe the imitations caused by non-exertional mental impairments (severe and non-severe), pain, fatigue and obesity; therefore, their use was not appropriate.  *Tackett,* 180 F.3d at 1103.  In evaluating obesity and its impact on RFC, an ALJ must consider claimant's ability "to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *SSR* 02-01p.  Without reliable

evidence that a claimant can perform a specific job, the ALJ must use a vocational expert to meet the Commissioner's step five burden. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). On remand, the ALJ will obtain vocational expert testimony on the impact of obesity and other non-exertional limitations on Plaintiff's ability to perform work-related activities on a sustained basis in a work setting. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 27)** is **GRANTED.** This matter is remanded to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and consistent with the decision above;

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 30)** is **DENIED;**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED October 23, 2007.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE